CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
708 Third Avenue – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------X

PARAMAPORN TEPPAWAN, CHIAWEN GARAY,
and SHELBY BILLIONAIRE, on behalf of themselves and
others similarly situated,

       Plaintiffs,

  -against-

DINING INNOVATION NEW YORK, INC. d/b/a TSURU TON
TAN UDON NOODLE BRASSERIE, JOJI UEMATSU, and
KULTHIWADI SANEEWONG,

       Defendants.

---------------------------------------------------------------------------------X

Case No. 19-CV-195

FLSA COLLECTIVE
ACTION and RULE
23 CLASS ACTION
COMPLAINT

**Jury Trial
Demanded**

   Plaintiffs PARAMAPORN TEPPAWAN, CHIAWEN GARAY, and SHELBY

BILLIONAIRE ("Plaintiffs"), on behalf of themselves and other similarly situated

employees, by and through their undersigned attorneys, Cilenti & Cooper, PLLC, file this

Complaint against defendants DINING INNOVATION NEW YORK, INC. d/b/a

TSURU TON TAN UDON NOODLE BRASSERIE ("TSURU TON TAN" or the

"Restaurant"), JOJI UEMATSU, and KULTHIWADI SANEEWONG (the "Individual

Defendants") (TSURU TON TAN and the Individual Defendants are collectively referred

to herein as "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2.      Plaintiffs further alleges that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid "spread of hours" premiums for each day that Plaintiffs' work shift exceeded ten (10) hours, (c) unpaid misappropriated tips, (d) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (e) prejudgment and post-judgment interest, and (f) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Each of the Plaintiffs are residents of Queens County, New York.

6.      Defendant TSURU TON TAN is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 21 East 16th Street, New York, New York 10003.

7.    At all relevant times, defendant JOJI UEMATSU has been the Chief Executive Officer and Vice President of TSURU TON TAN and, as such, is an owner, officer, shareholder, operator, supervisor and managing agent of TSURU TON TAN. Defendant, JOJI UEMATSU, actively participates in the day-to-day operation of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder and is jointly and severally liable with TSURU TON TAN.

8.    Defendant KULTHIWADI SANEEWONG is the Manager at TSURU TON TAN and, as such, supervises the employees and oversees and implements the Restaurant's policies as to hiring and firing of employees, setting employee work schedules, and the manner and method by which the employees' wages are paid. As the Manager, Ms. Saneewong actively participates in the day-to-day operation of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder and is jointly and severally liable with TSURU TON TAN.

9.    The Individual Defendants each exercise control over the terms and conditions of Plaintiffs' employment in that they have and have had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, and/or (v) create and maintain wage and hour records.

10.    The Individual Defendants are present on the premises of the Restaurant on a daily basis, actively supervise the work of the employees, and mandate that all issues

3

concerning the employees' employment – including hours worked and pay received – be authorized and approved by them.

11.     Defendant, TSURU TON TAN, is an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

12.     Defendants employed Plaintiff, PARAMAPORN TEPPAWAN (a/k/a "Annie") to work as a non-exempt waitress/server at the Restaurant from in or about September 2016 until on or about November 12, 2018.

13.     Defendants have employed Plaintiff, CHIAWAN GARAY to work as a non-exempt waitress/server at the Restaurant from in or about October 2017 through the present.

14.     Defendants employed Plaintiff, SHELBY BILLIONAIRE to work as a non-exempt waiter/server at the Restaurant from in or about October 2016 until in or about October 2017.

15.     The work performed by Plaintiffs was and is directly essential to the business operated by Defendants.

16.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

17.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned "spread of hours" premiums in direct contravention of the New York Labor Law.

18.     Defendants knowingly and willfully misappropriated from Plaintiffs their lawfully earned tips in direct contravention of the New York Labor Law.

4

19.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

20.     Defendant JOJI UEMATSU hires employees to work as managers and/or supervisors to participate in the day-to-day operation of the Restaurant.

21.     Defendant   JOJI   UEMATSU   hired   defendant   KULTHIWADI SANEEWONG to work as a Manager at the Restaurant.  Through authority granted to her by Mr. Uematsu, Ms. Saneewong has authority to and does hire and fire employees, set employee work schedules, and set employee rates of pay.

22.     Defendant JOJI UEMATSU himself also actively participates in the day-to-day operation of the Restaurant.  For instance, Mr. Uematsu personally supervises and directs the work of the employees, instructs the employees how to perform their jobs, and corrects and/or reprimands the employees for errors made.

23.     Although defendant JOJI UEMATSU provides other individuals with some authority to effectively run the day-to-day operation of the Restaurant, including the hiring and firing of employees, Mr. Uematsu creates and/or approves all business policies and makes the final decisions concerning the hiring and firing of employees, the number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

24.     In or about September 2016, Defendants hired Plaintiff, PARAMAPORN TEPPAWAN to work as a non-exempt waitress/server.

25.     Neither at the time of Plaintiff's hire, nor at any time thereafter, did Defendants provide Plaintiff with a proper written wage notice that set forth her regular hourly rate of pay and any tip credits taken.

5

26.     Plaintiff worked continuously for Defendants in that capacity until on or about November 12, 2018.

27.     From the beginning of her employment and continuing through in or about November 2016, Plaintiff worked five (5) days per week, and her work shift consisted of six (6) hours per day Monday through Thursday from 4:00 p.m. until 10:00 p.m.; and five and three-quarter (5¾) hours on Saturday from 4:45 p.m. until 10:30 p.m.

28.     During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $7.50 per hour and worked twenty-nine and three-quarter (29¾) hours per week (and sometimes in excess thereof).

29.     Beginning in or about December 2016 and continuing through in or about May 2018, although Plaintiff's work shift fluctuated slightly each week, Plaintiff typically worked five (5) days per week, and her work shift normally consisted of two (2) or three (3) double/split shifts per week of ten (10) to eleven (11) hours per day from either 11:00 a.m. or 12:00 p.m. until 3:45 p.m., and 4:30 p.m. until 10:00 p.m. (or slightly later); and two (2) or three (3) single shifts from 12:00 p.m. until 3:45 p.m. or from 4:30 p.m. until 10:00 p.m. (or slightly later).

30.     Beginning in or about December 2016 and continuing through in or about December 2016, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $7.50 per hour and worked between thirty (30) to thirty-five (35) hours per week.

31.     Beginning in or about January 2017 and continuing through in or about May 2018, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $8.65 per hour and worked between thirty (30) to thirty-five (35) hours per week.

6

32.     Beginning in or about June 2018 and continuing through the remainder of her employment on or about November 12, 2018, although Plaintiff's work shift fluctuated slightly each week, Plaintiff typically worked three (3) to four (4) days per week, and her work shift normally consisted of one (1) or two (2) double/split shifts per week of ten (10) to eleven (11) hours per day from 12:00 p.m. until 3:45 p.m., and 4:30 p.m. until 10:00 p.m. (or slightly later); and one (1) or two (2) single shifts from 12:00 p.m. until 3:45 p.m. or from either 4:30 p.m. 5:15 p.m. or 6:30 p.m. until 10:00 p.m. or 10:30 p.m.

33.     During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $8.65 per hour and worked between twenty (20) and twenty-eight (28) hours per week.

34.     Throughout the entirety of her employment, Plaintiff was required to punch a time clock or other time-recording device at the beginning and end of her work daily work shift.

35.     In or about October 2017, Defendants hired Plaintiff, CHIAWAN GARAY, to work as a non-exempt waitress/server.

36.     Neither at the time of Plaintiff's hire, nor at any time thereafter, did Defendants provide Plaintiff with a proper written wage notice that set forth her regular hourly rate of pay and any tip credits taken.

37.     Plaintiff continues to work for Defendants in that capacity at the present time.

38.     Throughout the entirety of her employment, although Plaintiff's work shift fluctuates slightly each week, Plaintiff typically works three (3) days per week, and her work shift normally consists of one (1) or two (2) double/split shifts per week of ten (10)

7

to eleven (11) hours per day from either 12:00 p.m. until 3:45 p.m., and 4:00 p.m. until 10:00 p.m. or 4:30 p.m. until 10:30 p.m.; and one (1) or two (2) single shifts from 11:00 a.m. or 12:00 p.m. until 3:45 p.m.

39. From the beginning of her employment and continuing through the present time, Plaintiff has not been paid proper minimum wages. Throughout the entirety of her employment, Plaintiff was and continues to be paid at the rate of $8.65 per hour and works between twenty (20) to twenty-five (25) hours per week.

40. Throughout the entirety of her employment, Plaintiff was required to punch a time clock or other time-recording device at the beginning and end of her work daily work shift.

41. In or about October 2016, Defendants hired Plaintiff, SHELBY BILLIONAIRE, to work as a non-exempt waiter/server.

42. Neither at the time of Plaintiff's hire, nor at any time thereafter, did Defendants provide Plaintiff with a proper written wage notice that set forth his regular hourly rate of pay and any tip credits taken.

43. Plaintiff worked continuously for Defendants in that capacity until in or about October 2017.

44. Throughout the entirety of his employment, although Plaintiff's work shift fluctuated slightly each week, Plaintiff typically worked four (4) days per week, and his work shift normally consisted of one (1) single shift per day from 11:00 a.m. until 3:45 p.m.

45. From the beginning of his employment and continuing in or about December 2016, Plaintiff was not paid proper minimum wages. During this period,

Plaintiff was paid at the rate of $7.50 per hour and worked nineteen (19) hours per week (and sometimes more).

46.     Beginning in or about January 2017 and continuing through the remainder of his employment in or about October 2017, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $8.65 per hour and worked nineteen (19) hours per week (and sometimes more).

47.     Throughout the entirety of his employment, Plaintiff was required to punch a time clock or other time-recording device at the beginning and end of his work daily work shift.

48.     In addition to failing to pay Plaintiffs their proper minimum wages, Defendants created a tip sharing/pooling arrangement for its tipped employees. Defendants' tip sharing/pooling arrangement included a "point system," whereby each of Defendants' tipped employees received a percentage share of the evening tips received by customers.

49.     Not only did Defendants create the tip sharing/pooling arrangement, Defendants also monitored and retained the tip funds each evening and distributed the tips at the end of each week.

50.     As part of its tip pooling/sharing arrangement, Defendants unlawfully required its waiters/waitresses, runners, and busboys to share a portion of their tips with Defendants' Expeditor.

51.     The job of Defendants' Expeditor is to ensure food orders are cooked in a timely fashion so that all orders for a table are ready simultaneously and served while warm.

9

52.     Expeditors do not regularly and customarily receive tips as part of their job and are not otherwise entitled to share the tips of a restaurant's food service workers or service employees.

53.     As part of its tip pooling/sharing arrangement, Defendants unlawfully required its tipped employees, including Plaintiffs, to forfeit a portion of their tips to the benefit of Defendants' Expeditor.

54.     Defendants' Expeditor received a substantial amount of money per week in tips, which otherwise belonged to Defendants' tipped employees. A portion of those tips legally belongs to Plaintiffs.

55.     Furthermore, Plaintiffs were required to forfeit their cash wages to Defendants at the end of each evening.  Defendants unlawfully retained Plaintiffs' cash tips for "the house."

56.     As a result of Defendants unlawful tip pooling/sharing arrangement, which deprived Defendants' tipped employees, including Plaintiffs, of all of their rightful tips, Defendants are not entitled to take any "tip credits" under federal or state law.  As such, Defendants were required to pay all of its tipped employees, including Plaintiffs, at the full statutory minimum wage rate.

57.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs and other similarly situated employees.

58.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs a "spread of hours" premium for each day that their work shift exceeded ten (10) hours in violation of the New York State Labor Law.

59.     Defendants knowingly and willfully operated their business with a policy of misappropriating Plaintiffs' tips in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

60.     At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

61.     Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt waiters/waitresses, busboys, and runners who have been or were employed by Defendants since January 8, 2016 through the date that the opt-in period closes as set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage (the "Collective Action Members").

62.     The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

63.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the

fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

64.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

65.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

66.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

> a.    Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;
>
> b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Collective Action Members;

c.      What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

d.      Whether Defendants failed to pay Plaintiffs and the Collective Action Members statutory minimum wages;

e.      Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f.      Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated damages, interest, attorneys' fees, and costs and disbursements.

67.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

68.      Plaintiffs and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

69.      Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

70.      Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since January 8, 2013 until the entry of judgment in this case (the "Class Period") who were non-exempt tipped waiters/waitresses, busboys, and runners and who have not been paid statutory minimum wages and/or had their tips misappropriated in violation of the New York Labor Law (the "Class").

71.      The persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons

13

is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Class consists of all non-managerial current and former tipped employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

72.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

73.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

74.     Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

75.     Plaintiffs will fairly and adequately protect the interests of the NY Class members.  Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class or Collective Action Members.

76.     Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and

Collective Action Members.  Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and that they may be called upon to testify in depositions and at trial.

77.     Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

78.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

> a.   Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;
>
> b.   Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Class members;
>
> c.   What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;
>
> d.   Whether Defendants failed to pay Plaintiffs and the Class members statutory minimum wages;
>
> e.   Whether Defendants required Plaintiffs and members of the Class to participate in an unlawful tip sharing/pooling arrangement, in violation of the New York Labor Law and the regulations promulgated thereunder;
>
> f.   Whether Defendants' violations of the New York Labor Law are willful as that term is used within the context of the New York Labor Law; and,

        g.      Whether Defendants are liable for all damages claimed hereunder,
including but not limited to compensatory, liquidated and statutory
damages, interest, costs, attorneys' fees, and costs and
disbursements.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

79.    Plaintiffs re-allege and re-aver each and every allegation and statement
contained in paragraphs "1" through "78" of this Complaint as if fully set forth herein.

80.    At all relevant times, Defendants were and continue to be an employer
engaged in interstate commerce and/or the production of goods for commerce within the
meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and the
Collective Action Members are covered individuals within the meaning of the FLSA, 29
U.S.C. §§ 206(a) and 207(a).

81.    At all relevant times, Defendants employed Plaintiffs and the Collective
Action Members within the meaning of the FLSA.

82.    At least within each of the three (3) most recent years from the date of this
Complaint, defendant TSURU TON TAN has had gross revenues in excess of $500,000.

83.    Defendants had, and continue to have, a policy and practice of refusing to
pay the statutory minimum wage to Plaintiffs and the Collective Action Members for
hours worked.

84.    Defendants willfully failed to pay Plaintiffs and the Collective Action
Members minimum wages in the lawful amount for hours worked.

85.    Defendants knowingly and willfully disregarded the provisions of the
FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action

16

Members at the statutory minimum wage rate, when they knew or should have known such was due and that non-payment of minimum wages would financially injure Plaintiffs and the Collective Action Members.

86.     As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

87.     Defendants failed to properly disclose or apprise Plaintiffs and the Collective Action Members of their rights under the FLSA.

88.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages.

89.     Due to the reckless, willful and unlawful acts of the Defendants, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages, an equal amount as liquidated damages, and prejudgment interest thereon.

90.     Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

91.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

92.     At all relevant times, Defendants employed Plaintiffs and the Class members within the meaning of New York Labor Law §§ 2 and 651.

93.    Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by failing to pay them minimum wages in the lawful amount for hours worked.

94.    Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by failing to pay "spread of hours" premium for each day their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations § 146-1.6.

95.    Defendants knowingly and willfully violated the rights of Plaintiffs and members of the Class by misappropriating tips from Plaintiffs and members of the Class by requiring them to participate in an unlawful tip sharing/pooling arrangement, in violation of the New York Labor Law and New York State Department of Labor Regulations §§ 146-2.14, 15, and 16.

96.    Defendants failed to properly disclose or apprise Plaintiffs and the Class members of their rights under the New York Labor Law.

97.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

98.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

99.    Defendants failed to notify Plaintiffs and the Class members of their rates of pay, any tip credits or deductions taken, and their regularly designated payday, in contravention of New York Labor Law § 195(1).

100.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid "spread of hours" premiums, unpaid misappropriated tips, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

101.    Plaintiffs and the Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiffs PARAMAPORN TEPPAWAN, CHIAWEN GARAY, and SHELBY BILLIONAIRE, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully request that this Court grant the following relief:

(a)    An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)    An award of unpaid "spread of hours" premiums due under the New York Labor Law;

(c)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages pursuant to the FLSA;

(d)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages and "spread of hours" premiums pursuant to the New York Labor Law;

(e)     An award of unpaid misappropriated tips in violation of state law;

(f)     An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g)     An award of prejudgment and post-judgment interest;

(h)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(i)     Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

trial by jury on all issues.

Dated: New York, New York
January 8, 2019

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiffs*
708 Third Avenue – 6th Floor
New York, NY 10017
T.  (212) 209-3933
F.  (212) 209-7102

By:  _____
Giustino (Justin) Cilenti (GC2321)

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

I, _Paramaporn Teppawan_, am an employee currently or

formerly employed by _Suru Tom Tun_, and/or related

entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_____, 2018

_____

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, _Chia Wen Garay_, am an employee currently or formerly employed by _Tsuv Ton Tan_, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_11 / 19_, 2018

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, _Shelby Billionaire_, am an employee currently or formerly employed by _Buru Ton Tan_, and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
_II / 26_, 2018